UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRENT McFARLAND,<br><br>                   Plaintiff,<br><br>    v.<br><br>BNSF RAILWAY COMPANY,<br><br>                   Defendant. | No.  4:16-CV-5024-EFS<br><br>**ORDER DENYING DEFENDANT BNSF'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)** |

After working for BNSF Railway Company for many years, Plaintiff Brent McFarland claims he was wrongfully discharged in violation of public policy for filing a grievance and subsequent lawsuit against BNSF to recover for a workplace injury. BNSF seeks dismissal of this lawsuit because 1) Mr. McFarland's state-law wrongful-discharge tort claim is preempted by the Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq.*, and 2) Mr. McFarland is collaterally estopped from re-litigating that his termination was based on Collection Bargaining Agreement (CBA) Rule 16(f). Mr. McFarland maintains his state-law claim is not preempted and that he is not collaterally estopped from seeking relief under Washington state law. After reviewing the record and relevant legal authority, the Court denies BNSF's motion to dismiss.

ORDER - 1

**A.   Factual Statement[1]**

Mr. McFarland worked for BNSF for over 15 years, beginning as a carman apprentice and a journeyman railroad carman. As a union employee, his employment relationship with BNSF was governed by the CBA, ECF No. 9-1. During his employment with BNSF, Mr. McFarland also worked for his father's company, RJ Mac. Both exempt and scheduled BNSF employees at the Pasco site knew that Mr. McFarland worked for his father's company as well.

In 2009, Mr. McFarland suffered an on-the-job injury to his right shoulder while working for BNSF. He tried to informally resolve his injury claim with BNSF but was unsuccessful. Mr. McFarland then filed a lawsuit against BNSF under the Federal Employers Liability Act (FELA), seeking to recover damages for his injury. Trial was held. Mr. McFarland testified. During his testimony, Mr. McFarland stated that he worked for RJ Mac while on leaves of absence from BNSF in 2003 and 2004. The jury decided in BNSF's favor on Mr. McFarland's FELA claim.

---

[1] The "factual statement" is based on the factual allegations in the Complaint, ECF No. 1-2, and the CBA, ECF No. 9-1. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (When considering a motion to dismiss, "[a] court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.").

ORDER - 2

Soon after post-trial motions, which were decided in BSNF's favor, BNSF terminated Mr. McFarland. BNSF advised that it terminated Mr. McFarland because he violated the CBA by working for RJ Mac while on leaves of absence from BNSF in 2003 and 2004—nine years prior thereto:

> Employees accepting other compensated employment while on leave of absence without first obtaining permission from the officer in charge and approved by the General Chairman shall be considered out of service, and their names shall be removed from the seniority roster.

CBA Rule 16(f), ECF No. 9-1. When Mr. McFarland confronted his prior boss at BNSF, Ryan Risdon, Mr. Risdon stated, "What do you expect. You got the ball rolling, [sic] It is your fault for bringing a lawsuit against the company." BNSF did not terminate similarly situated employees who worked for outside companies.

The Union filed a grievance, on Mr. McFarland's behalf, challenging his discharge under Rule 16(f). The grievance was handled between BNSF and the Union pursuant to CBA Rule 34, ECF No. 9-1, with BNSF apparently prevailing as to its position that Mr. McFarland violated Rule 16(f) and therefore his discharge was appropriate. In January 2015, the Union informed Mr. McFarland that it did not intend to pursue arbitration of his grievance.

Mr. McFarland then filed this lawsuit, alleging that BNSF's proffered reason for terminating him—CBA Rule 16(f)—was merely a pretext for the true basis for his termination, which was in retaliation for filing a grievance and then FELA lawsuit seeking to recover for his worksite injury. The claim asserted is a state-law tort claim of wrongful discharge in violation of Washington's public policy against

ORDER - 3

discharging an employee for exercising a legal right or privilege, or for engaging in whistleblowing activity.

BNSF removed this lawsuit from state court and then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6). Briefing ensued.

**B.    Standard**

Rule 12(b)(1) provides that an action must be dismissed for lack of subject-matter jurisdiction. The party filing the lawsuit in federal court—the plaintiff in a lawsuit that was initially filed in federal court and the defendant in a lawsuit that was removed to federal court—bears the burden of establishing subject-matter jurisdiction. *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555. In ruling on a motion under Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff and accept all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

**C.   Authority and Analysis**

BNSF seeks dismissal for two reasons: first, under Rule 12(b)(1) for lack of subject-matter jurisdiction because this lawsuit involves a CBA minor dispute and is therefore preempted by the Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq.*; and second, under Rule 12(b)(6) because Mr. McFarland is collaterally estopped from challenging the application of CBA Rule 16(f), as interpreted by BNSF, to his claim in this lawsuit. The Court begins with the subject-matter jurisdiction question of preemption under the RLA.

The RLA established a system to handle disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" for the railway and airline industry. *Hawaiian Airlines v. Norris*, 512 U.S. 246, 248 (1994) (quoting 45 U.S.C. § 153 First (i)). The purpose was to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Id.* at 252. To accomplish this purpose, the RLA requires mandatory arbitration for two types of disputes: major disputes (those concerning "rates of pay, rules or working conditions") and minor disputes (those which "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id.* at 252-53 (quoting § 151a). BNSF contends that Mr. McFarland's claim is a minor dispute as it requires the interpretation of CBA Rule 16(f) and that his claim is therefore preempted by the RLA.

RLA preemption of state-law claims is not to be lightly inferred. *Hawaiian*, 512 U.S. at 252. To ensure that RLA preemption is not lightly

ORDER **-** 5

inferred, a two-step analysis is used. If both of the following questions are answered in the affirmative, then the state-law claim can proceed: first, does the asserted cause of action involve a right conferred on the employee by virtue of state law, not the CBA; and second, can the state-law claim be resolved by looking to, rather than interpreting, the CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (setting forth test in the confines of a Labor Management Relations Act (LMRA) case[2]) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *Hawaiian Airlines*, 512 U.S. at 260-61 (involving the scope of preemption under the RLA).

At the first step, the Court finds that Mr. McFarland's wrongful-discharge claim is independent of the CBA: it is based on Washington public policy. Washington courts recognize a "public policy tort in recognition that the at-will doctrine gives employers potentially 'unfettered control of the workplace and, thus, allows the employer to take unfair advantage of its employees.'" *Rickman v. Premera Blue Cross*, 184 Wn.2d 300, 309 (2015) (quoting *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 226 (1984)). To prove Washington's state-law tort of wrongful discharge, an employee must establish 1) the existence of a clear public policy, 2) that discouraging the conduct in which the employee engaged would jeopardize the public policy, and 3) that the public-policy-linked conduct caused the dismissal. *Id.* at 310. As to the first element, the

---

[2] The Supreme Court recognizes that the preemption standard under the RLA is virtually identical to the preemption standard in LMRA cases. *Hawaiian Airlines*, 512 U.S. at 263.

ORDER - 6

Washington Supreme Court has recognized that the tort of wrongful discharge extends to a claim that an employer retaliated against the employee for whistleblowing activity, *Dicomes v. State*, 113 Wn.2d 612 (1989), and for obtaining legal assistance to confront the employer's unlawful discrimination, *Bennett v. Hardy*, 113 Wn.2d 912, 924 (1990). To establish causation, the employee need not prove that the employer's sole motivation was retaliation; instead, the employee must produce evidence that his actions in furtherance of the public policy was a substantial factor motivating the employer's discharge decision. *Rickman*, 184 Wn.2d at 314; Wash. Pattern Jury Instr. Civ. 330.01.01 & Comments. Once the employee establishes these *prima facie* elements, the employer has the burden of establishing that the termination was justified by an overriding legitimate consideration. *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 940 (1996).

Washington's public policy against discharging an employee for protected activity is a substantive protection provided by Washington state tort law, which is separate from any rights provided by the CBA. *See Hawaiian Airlines*, 512 U.S. at 258-59 ("Wholly apart from any provision of the CBA, petitioners had a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistleblowing."). Mr. McFarland's *prima facie* claim of wrongful discharge in violation of Washington public policy requires a purely factual inquiry into BNSF's alleged retaliatory termination decision. *See id.* at 266. Accordingly, the Court finds the asserted claim involves a right conferred on Mr. McFarland by virtue of state law, not the CBA. *Cf. Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320 (1972)

ORDER - 7

(finding that wrongful-discharge claim was dependent upon contractual rights created by the CBA).

The second preemption-analysis step focuses on whether the court or jury must merely "look to" the CBA (no preemption) or whether interpretation of the CBA is required (preemption). This distinction is "not always clear or amendable to a bright-line test." *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). And here the line is not crystal clear. But the Court determines, based on Mr. McFarland's claim and legal arguments in support thereof, that his wrongful-discharge claim merely "looks to" rather than requires interpretation of the CBA.

Because Mr. McFarland's employment relationship with BNSF was governed by the CBA, it is uncontested that the CBA will be discussed and referred to. However, as set forth above, the elements that Mr. McFarland must prove in order to establish a *prima facie* case of wrongful discharge in violation of Washington public policy for having pursued a grievance and subsequent litigation for a workplace injury do not require interpreting the CBA, or more specifically CBA Rule 16(f). If Mr. McFarland is able to establish a *prima facie* case of wrongful discharge, it is certain that BNSF will argue that its termination decision was based solely on Rule 16(f). Yet, so long as Mr. McFarland does not challenge BNSF's interpretation of Rule 16(f), the jury may look to Rule 16(f)—as interpreted and applied by BNSF—and consider the evidence presented by Mr. McFarland that BNSF's proffered reason was merely a pretext, such as evidence that BNSF officials knew of his RJ Mac work in advance of his grievance and subsequent litigation and that

other individuals who engaged in non-BNSF work while on a leave of absence were not fired. *See Miglio v. United Airlines*, No. C13-573RAJ, 2014 WL 1089285, at *5 (W.D. Wash. March 17, 2014) ("[T]o pursue his [discrimination] claim successfully, he does not have to dispute United's interpretation of the CBA. He could concede that the CBA mandated his termination and nonetheless contend that United terminated him because of his disability in violation of Washington law."). Accordingly, Rule 16(f) need not be interpreted in order for the wrongful-discharge-in-violation-of-public-policy claim to be resolved. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 & n.12 (1988) ("In a typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement."); *Burnside*, 491 F.3d at 1071-72 (recognizing that looking to and examining CBA provisions in order to resolve a state-law claim does not result in preemption).

Accordingly, the Court finds Mr. McFarland's wrongful-discharge claim is not preempted by the RLA. BNSF's motion to dismiss is denied in this regard.

Next, BNSF argues that Mr. McFarland fails to state a claim for relief because he is collaterally estopped from challenging BNSF's Rule 16(f) termination as he pursued a grievance under the CBA procedures, and therefore dismissal under Rule 12(b)(6) is required. In response, Mr. McFarland argues that the Union and BNSF's grievance procedure was not sufficiently extensive as to permit the application of collateral estoppel.

ORDER **-** 9

Under Washington law, collateral estoppel[3] requires the party seeking preclusion to establish that:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 152 Wn.2d 299, 307 (2004). An "issue" to which collateral estoppel applies may be one of law, evidentiary fact, or the application of law to fact. Restatement (Second) of Judgments § 27(c) (1982). Whatever the type of issue, it must have been actually litigated and determined and that determination must be essential to the judgment in order for litigation of that issue to be collaterally estopped in a later action. *Christensen*, 152 Wn.2d, at 307; Restatement (Second) of Judgments § 27(f)-(h) (1982); Moore's Federal Practice – Civil § 132.02.

The Court determines that collateral estoppel should not apply at this time. The information before the Court does not identify that the grievance proceeding was such a proceeding that Mr. McFarland, or the Union on his behalf, actually litigated what the true basis for Mr. McFarland's termination was. More pointedly, there is no information that the Union, on Mr. McFarland's behalf, presented evidence, called witnesses, made an opening or closing statement, submitted briefs, or

---

[3] Collateral estoppel may apply to an issue in a wrongful-discharge in violation of public policy case. *Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 152 Wn.2d 299, 313 (2004).

ORDER - 10

otherwise litigated whether Mr. McFarland's discharge was appropriate under Rule 16(f); there is no information as to what legal standard, if any, was applied during the CBA Rule 34 grievance proceeding; and the Court was not provided a copy of any written decision or transcript from an oral proceeding in which rulings were made. *See Cloud ex rel. Cloud v. Summers*, 98 Wash. App. 724, 734–35 (1999) (finding collateral estoppel inappropriate where the legal standards were substantially different); *cf. Christensen*, 152 Wn.2d at 316-17 (discussing that the union's lawyer made an opening statement, called and cross-examined witnesses, offered exhibits, objected to evidence, and submitted post-hearing briefing). Based on the record, Mr. McFarland did not have a full and fair opportunity to present his case that he was wrongfully discharged for pursuing a workplace-injury grievance and subsequent lawsuit. *See Lutheran Day Care v. Snohomish Cnty.*, 119 Wn.2d 91, 114 (1992) (Collateral estoppel "prevents the relitigation of an issue or determination of fact after the party sought to be estopped has had a full and fair opportunity to present his or her case."). Application of collateral estoppel would work an injustice on Mr. McFarland.

Accordingly, the Court denies BNSF's motion to dismiss pursuant to Rule 12(b)(6) because collateral estoppel does not apply: Mr. McFarland is not estopped from challenging BNSF's proffered basis for his termination through his state-law wrongful-discharge tort claim.

///

///

//

/

ORDER **-** 11

**D.     Conclusion**

For the above given reasons, **IT IS HEREBY ORDERED**: BNSF's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), **ECF No. 7**, is **DENIED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this   5th   day of May 2016.

                             s/Edward F. Shea
                             EDWARD F. SHEA
                    Senior United States District Judge