UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRENT McFARLAND,<br><br>                    Plaintiff,<br><br>          v.<br><br>BNSF RAILWAY COMPANY,<br><br>                    Defendant. | No.  4:16-CV-05024-EFS<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

   Before the Court is Defendant BNSF Railway Company's Motion for Summary Judgment and for Partial Summary Judgment, ECF No. 40. Plaintiff Brent McFarland claims that BNSF wrongfully discharged him in retaliation for hiring an attorney and bringing a lawsuit under the Federal Employers Liability Act (FELA). *See* ECF No. 17.  BNSF seeks summary judgment, arguing that Mr. McFarland was not discharged for filing a FELA claim, and was instead removed from the seniority roster pursuant to Rule 16(f) of the Brotherhood Railway Carmen Collective Bargaining Agreement (BRC CBA) because he worked for another employer while on a leave of absence. ECF No. 40.  BNSF also argues that Mr. McFarland lacks any similarly situated comparator, and asks — as alternative relief — for partial summary judgment as to "the portion of plaintiff's claim that relies on alleged disparate treatment." ECF No. 40 at 10.  Mr. McFarland counters that a jury could find that dismissal

ORDER **-** 1

1  under Rule 16(f) was pretext, or that his FELA lawsuit was nevertheless
2  a substantial factor in BNSF's decision, and that his claim is not
3  dependent on proving disparate treatment. ECF No. 48.  After reviewing
4  the record and relevant legal authority, for the reasons set forth
5  below, the Court finds there are genuine issues of material fact and
6  therefore denies BNSF's Motion.

## I.  FACTS AND ALLEGATIONS

Mr. McFarland worked for BNSF for over 15 years as a carman, starting in 1994 and terminating in 2013. Ex. 54, ECF No. 51-1 at 43. The BRC CBA, which governed Mr. McFarland's employment relationship with BNSF, prohibited other employment during a leave of absence:

> Employees accepting other compensated employment while on leave of absence without first obtaining permission from the officer in charge and approved by the General Chairman shall be considered out of service, and their names shall be removed from the seniority roster.[1]

CBA Rule 16(f), Ex. 1, ECF No. 46-1 at 16.  Nonetheless, throughout his employment with BNSF, Mr. McFarland also worked for his father's company, RJ Mac, including during periods when he had taken a leave of absence from BNSF. *See, e.g.*, Ex. 4, ECF No. 42-1 at 3–4.

According to Mr. McFarland, "[p]robably 95 percent of all of the foremans [sic] knew" that he worked for RJ Mac while on a leave of absence. Ex. 52, ECF No. 51-1 at 19.  BNSF denies this, and three of Mr. McFarland's supervisors have provided affidavits stating that they were unaware of Mr. McFarland's employment with RJ Mac while on leave, and that if they had known, they would have informed Mr. McFarland that

---

[1] Though this BRC CBA only became effective in February 2006, the predecessor agreement contained the same restrictions. *See* Ex. 14, ECF No. 55-1 at 23.

ORDER ‑ 2

such employment was prohibited or they would have reported the violation. Exs. 16–18, ECF No. 55-1 at 34–35, 39–43, 48–49. Yet, BNSF did not take any proactive steps to discover Rule 16(f) violations, had no written policies on how to handle allegations of Rule 16(f) violations, and in ten years — across the country — had discharged only three employees under Rule 16(f). Ex. 68, ECF No. 51-1 at 151–152; Ex. 70, ECF No. 51-1 at 160.

In December 2009, Mr. McFarland injured his right shoulder. *See* ECF No. 17 at 3. In 2012, after trying unsuccessfully to obtain compensation from BNSF, Mr. McFarland filed a FELA lawsuit, alleging BNSF committed negligence that had caused him to suffer an on-the-job injury. Ex. 57, ECF No. 51-1 at 53–57. In August 2013, during the resulting trial, Mr. McFarland's testimony included statements that he had worked for RJ Mac while on leaves of absence from BNSF in 2003 and 2004. Ex. 59, ECF No. 51-1 at 75–77. Ultimately, the jury found in BNSF's favor on Mr. McFarland's FELA claim, and the trial court entered its last ruling — denying Mr. McFarland's motion for new trial — on October 22, 2013. Ex. 61, ECF No. 51-1 at 106.

On November 6, 2013, Mr. McFarland and his union representative, Bert Barnes, were called into Ryan Risdon's office. Ex. 52, ECF No. 51-1 at 109. Mr. Risdon presented a letter bearing his signature to Mr. McFarland, which indicated that Mr. McFarland was being removed from the seniority roster for violating Rule 16(f) of the BRC CBA. Ex. 60, ECF No. 51-1 at 95–96. Mr. McFarland avers that upon reading the letter, he confronted Mr. Risdon, saying, "This is retaliation for my lawsuit." And Mr. Risdon's response was something to the effect of: "What do you

expect? You sued the railroad." Ex. 52, ECF No. 51-1 at 24–28. During a deposition, Mr. Barnes likewise paraphrased Mr. Risdon's statement as: "What did you think would happen if [you] sued the railroad[?]" Exhibit 62, ECF No. 51-1 at 111. But BNSF denies that Mr. Risdon made such a statement, and asserts that Mr. Risdon merely said the matter was outside his control and explained the origins of the evidence used to find a Rule 16(f) violation. Ex. 12, ECF No. 55-1 at 4.

The union initially challenged Mr. McFarland's discharge, but later informed him that it would not be pursuing the grievance because it did not believe it could prevail in arbitration. *See* Ex. 11, ECF No. 43-1 at 43. Mr. McFarland then filed this lawsuit, alleging that BNSF's proffered reason for terminating him — Rule 16(f) — was merely a pretext for the true basis for his termination, which was in retaliation for filing a grievance and FELA lawsuit seeking to recover for his worksite injury. ECF No. 17.

## II.   APPLICABLE LEGAL STANDARDS

**A.   Summary Judgment**

A motion for summary judgment will only be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of providing the basis for its motion and must identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The substantive law identifies which

ORDER **-** 4

facts are material, and only disputes over facts that might affect the outcome under that governing law will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, to prevail on summary judgment, a defendant must affirmatively demonstrate an absence of evidence to support the plaintiff's case such that no reasonable trier of fact could find other than in the defendant's favor. *See Celotex Corp.*, 477 U.S. at 323. If the defendant meets this initial burden, the plaintiff must then provide "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250.

When deciding whether to enter summary judgment, the Court makes no credibility determinations and does not weigh conflicting evidence. Instead, it must construe the evidence — and draw all reasonable inferences therefrom — in the light most favorable to the nonmoving party. *See Liberty Lobby*, 477 U.S. at 255; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Nonetheless, evidence presented by the parties must be admissible, Fed. R. Civ. P. 56(e)(1), and conclusory or speculative statements are insufficient to raise genuine issues of fact and defeat summary judgment, *see Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**B.   Wrongful Discharge in Washington State**

Under Washington State law, the tort of wrongful discharge in violation of public policy is an exception to the at-will employment doctrine, and is narrowly drawn to further the goal of preventing employers from using the at-will doctrine to subvert those who seek to

ORDER **-** 5

promote public policy. *See Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1088–89 (Wash. 1984). The Washington State Supreme Court recognizes the tort of wrongful discharge as extending to claims of employer retaliation for whistleblowing activity, *Dicomes v. State*, 782 P.2d 1002, 1007 (Wash. 1989), as well as for obtaining legal assistance to confront the employer's unlawful discrimination, *Bennett v. Hardy*, 784 P.2d 1258, 1264 (Wash. 1990). And when analyzing a claim that falls within a such a recognized category, Washington courts apply a three-step, burden-shifting test taken from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973).[2] *See, e.g.*, *Scrivener v. Clark Coll.*, 334 P.3d 541 (Wash. 2014) (applying the *McDonnell Douglas* framework in the employment discrimination context).

    The first step is for the plaintiff to make out a prima facie case for retaliatory discharge. *See Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 28–29 (Wash. 1991). To do so, the plaintiff "need not attempt to prove the employer's sole motivation was retaliation." *Wilmot*, 821 P.2d at 30. Rather, the plaintiff need only produce evidence — even if circumstantial — that his actions, which were in furtherance of public policy, were "*a* cause of the firing." *Wilmot*, 821 P.2d at 30; *see also, Rickman v. Premera Blue Cross*, 358 P.3d 1153, 1160 (Wash. 2015).

---

[2] As Mr. McFarland's claims fit within common and previously-recognized wrongful discharge scenarios, the Court need not apply the four-factor "Perritt analysis" to determine whether Mr. McFarland has alleged a violation of public policy that warrants recovery. *Cf. Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 382 (Wash. 1996) ("Because this situation does not involve the common retaliatory discharge scenario, it demands a more refined analysis than has been conducted in previous cases." (*citing* Henry H Perritt, Jr, *Workplace Torts: Rights and Liabilities* § 3.7 (1991))).

ORDER **-** 6

At the second step, the burden of production shifts to the employer, who must articulate a legitimate, non-retaliatory reason for the discharge. *Wilmot*, 821 P.2d at 29. "The employer must produce relevant admissible evidence of another motivation, but need not do so by the preponderance of evidence necessary to sustain the burden of persuasion, because the employer does not have that burden[.]" *Id*.

The third step requires that the plaintiff respond to the employer's proffered reason by showing either (1) the employer's articulated reason is pretext, or (2) even if the employer's stated reason is legitimate, retaliation for protected conduct was nevertheless a substantial motivating factor. *Wilmot*, 821 P.2d at 31. For summary judgment purposes, this is a burden of production, not persuasion, and the plaintiff need only offer sufficient evidence to create a genuine issue of material fact. *See Scrivener*, 334 P.3d at 546.

### III. ANALYSIS

**A.    Summary Judgment: Application of *McDonnell Douglas***

Here, the Court finds that Mr. McFarland has satisfied step one of the *McDonnell Douglas* analysis. During his deposition, Mr. McFarland stated that his supervisors had long been aware that he worked for RJ Mac while on leaves of absence, but he was not terminated until his FELA case reached final resolution. Mr. McFarland also provided evidence that Mr. Risdon essentially admitted that Mr. McFarland was being removed from the seniority roster because he had sued the railroad. Such evidence, when assumed to be genuine and accurate, is more than sufficient to show a prima facia case of wrongful termination.

1    At step two, the Court finds that BNSF has articulated a legitimate
2 reason for terminating Mr. McFarland, namely his violation of Rule
3 16(f).

4    It is step three, therefore, upon which summary judgment hinges.
5 And at this third step, the Court finds Mr. McFarland has demonstrated
6 that a genuine issue of material fact exists as to whether BNSF's
7 decision to discharge him under Rule 16(f) was either pretext or
8 substantially motivated by retaliation.

9    1.   BNSF's Arguments Supporting Discharge Under Rule 16(f)

10    BNSF makes cogent arguments for why Mr. McFarland's discharge
11 under Rule 16(f) was not pretext. Primarily, BNSF argues that there is
12 no evidence of a retaliatory motive because: (1) the decision to remove
13 Mr. McFarland from the seniority roster was within the sole discretion
14 of Ollie Wick, the General Director of Labor Relations at BNSF; (2) in
15 arriving at his decision, Mr. Wick relied exclusively on Mr. McFarland's
16 own sworn testimony and the terms of the BRC CBA; and (3) the clear
17 terms of the BRC CBA show Rule 16(f) is self-executing, meaning Mr.
18 McFarland's removal from the seniority roster was both mandatory and
19 automatic. *See* ECF No. 44. Indeed, Mr. Wick averred that he alone made
20 the decision to remove Mr. McFarland from the seniority roster, and that
21 he was not aware of — let alone motivated by — Mr. McFarland's FELA
22 lawsuit. Ex. 13, ECF No. 55-1 at 10–11.

23    In BNSF's view, Mr. Wick's role in Mr. McFarland's removal not
24 only illustrates a lack of retaliatory intent, but also proves that
25 others at BNSF did not use Mr. Wick as a "cat's paw" to retaliate against
26 Mr. McFarland. *See* ECF No. 40. BNSF cites to *Staub v. Proctor Hospital*,

ORDER **-** 8

562 U.S. 411 (2011), as supportive of its argument that Mr. Wick's "independent" review and sole discretion shields BNSF from liability because Mr. Wick did not rely on any "biased" representations, and instead looked to Mr. McFarland's own sworn statements. *See* ECF No. 40 at 7–9. Although some of the language in *Staub* can be read to support BNSF's position, and the case addressed similar issues, that case dealt with statutory language and discrimination rather than common law and retaliation. More importantly, when read as a whole, *Staub* is not helpful to BNSF.

    2. *Staub v. Proctor Hospital*

In *Staub*, the United States Supreme Court addressed the issue of what circumstances must exist for an employer to be held liable for employment discrimination based on the animus of an employee who "influenced, but did not make, the ultimate employment decision." 562 U.S. at 413. There, the Court analyzed the text of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 et seq., which prohibits adverse employment action if discrimination is "a motivating factor." The Supreme Court concluded that even if the decision to terminate an employee was based in part on a report that was prompted by discrimination, such discrimination was not a motivating factor so long as the decision maker had no unlawful animus and was unaware of the report's discriminatory origins. *Staub*, 562 U.S. at 418–19. However, the Supreme Court also noted,

> An employer's authority to reward, punish, or dismiss is often allocated among multiple agents. . . . [Defendant's] view would have the improbable consequence that if an employer isolates a personnel official from an employee's supervisors, vests the decision to take adverse employment

1   actions in that official, and asks that official to review
2   the employee's personnel file before taking the adverse
    action, then the employer will be effectively shielded from
3   discriminatory acts and recommendations of supervisors that
    were designed and intended to produce the adverse action.
4   That seems to us an implausible meaning of the text, and one
    that is not compelled by its words.

5   *Staub*, 562 U.S. at 420. Thus, *Staub* is consistent with the principle

6   that an employer cannot escape liability for wrongful discharge simply

7   by pointing to a selectively enforced, but otherwise "valid" policy.

8   *See Wilmot*, 821 P.2d at 31–32 (stating that if an absenteeism policy is

9   not evenly applied, "or if it is applied where an employee's absence is

10  relatively brief, an employee may use those circumstances as tending to

11  show the absenteeism policy was a pretext for discharge").

12       3.   <u>Evidence of Unlawful Motivation or Pretext</u>

13       If Mr. McFarland's evidence is accepted as accurate, and all

14  reasonable inferences are drawn in his favor, a juror could reasonably

15  believe that BNSF discharged Mr. McFarland in retaliation for his FELA

16  lawsuit. As previously noted, if BNSF supervisors knew for over a

17  decade that he worked for RJ Mac during leaves of absence, the fact that

18  BNSF only terminated Mr. McFarland after his FELA case had concluded is

19  circumstantial evidence of retaliation. The rarity with which BNSF

20  enforces Rule 16(f) lends further support, and — for the purposes of

21  summary judgment — one must assume that Mr. Risdon really did make

22  statements tying Mr. McFarland's discharge to his lawsuit. Given such

23  evidence, a reasonable juror could infer that BNSF employees would not

24  have brought Mr. McFarland's Rule 16(f) violations to the attention of

25  Mr. Wick in the first place if Mr. McFarland had not sued BNSF.

26  Moreover, given that it was the transcript from Mr. McFarland's FELA

case that Mr. Wick received, reviewed, and relied upon in making his determination, a juror might reasonably infer that — despite his statements to the contrary — Mr. Wick did know about Mr. McFarland's lawsuit against BNSF. In either scenario, a reasonable juror could question BNSF's motives for invoking Rule 16(f), meaning summary judgment would be inappropriate.

**B.     Summary Judgment as to "Comparator Claim"**

BNSF asks, in the alternative, that the Court "grant partial summary judgment dismissing plaintiff's 'comparator' claim, on the ground that none of the alleged comparators is similarly situated to plaintiff." ECF No. 40 at 2. BNSF provided evidence that Thomas Kinghorn was not subject to the same CBA, let alone a provision analogous to Rule 16(f). ECF No. 46 at 9. Neither was Greg Coronado, who had stopped working after signing an "out of service" settlement agreement, but was able to keep certain benefits for a time. *See* Ex. 3, ECF No. 41-1 at 11. Hal Smith apparently resigned in order to operate a tool business after being informed that he could not work for another employer while on leave. ECF No. 46 at 94–95. And none of them had the same supervisors as Mr. McFarland. ECF No. 46 at 10–11.

Generally, plaintiffs must be able to point to valid comparators when bringing a disparate treatment claim under Title VII, Washington Law Against Discrimination (WLAD), and 42 U.S.C. § 1981. *See, e.g.*, *Alonso v. Qwest Commc'ns Co.*, 315 P.3d 610 (Wash. App. 2013) (noting that under WLAD, disparate treatment occurs when employers treat certain employees "less favorably" than others because of race, color, or other protected status). Here, however, Mr. McFarland is not alleging

discrimination, he is alleging that BNSF retaliated against him for reporting employer misconduct and/or exercising a legal right or privilege; his sole cause of action is for wrongful discharge in violation of public policy. *See* ECF No. 38.

BNSF correctly points out that Mr. McFarland's pleadings alleged that other employees had similarly worked for RJ Mac, but were not terminated because they did not bring a lawsuit against BNSF. ECF No. 17 at 8; ECF No. 54 at 3. Naturally, comparator evidence that verified this type of allegation would tend to show pretext on the part of BNSF, whereas comparator evidence showing consistent application of Rule 16(f) would tend to undermine Mr. McFarland's claim. The potential significance and importance of this kind of comparator evidence, however, does not somehow transform Mr. McFarland's wrongful discharge claim into a "comparator claim," or otherwise split the issues such that partial summary judgment is appropriate. Instead, any proffered comparator evidence will be governed by the usual principles and rules of evidence.

### IV.   CONCLUSION

The record contains competing representations of fact from which a jury could find either that Mr. McFarland was wrongfully terminated or that he was terminated for a legitimate, non-retaliatory reason. Both Mr. McFarland and BNSF Railway met their preliminary evidentiary burdens, and what evidence is to be believed is a matter for the jury. *See Scrivener*, 334 P.3d at 545 ("When the record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation."). Further, there

is no separate comparator claim or issue that would warrant partial summary judgment.

For reasons set forth above, **IT IS HEREBY ORDERED**, Defendant BNSF Railway Company's Motion for Summary Judgment and for Partial Summary Judgment, **ECF No. 40**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this   2nd   day of February 2017.

                         s/Edward F. Shea
                         EDWARD F. SHEA
                Senior United States District Judge

Q:\EFS\Civil\2016\16-CV-5024;McFarland.Deny.MSJ.LC1.docx

ORDER **-** 13